## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HADEK PROTECTIVE SYSTEMS, B.V., and HADEK PROTECTIVE SYSTEMS, INC., | ) ) ) | Civil Action No. 2:22-cv-1421 |
| Plaintiffs, | ) ) ) | Magistrate Judge Patricia L. Dodge |
| v. | ) ) | |
| ERGON ASPHALT & EMULSIONS, INC., | ) ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM OPINION AND ORDER

Presently before the Court is a Motion to Exclude the Testimony of Hadek's Damages Expert Melissa Bizyak filed by Defendant Ergon Asphalt & Emulsions, Inc. ("Ergon") (ECF No. 109) which is supported by a Brief and Reply Brief (ECF Nos. 112, 124). Plaintiffs Hadek Protective Systems B.V. and Hadek Protective Systems, Inc. (collectively "Hadek") filed a Brief in opposition to the motion (ECF No. 123).[1]

For the reasons that follow, Ergon's motion will be denied in part.

### I.    Relevant Background[2]

Hadek asserts in this action that Ergon breached a Master Agreement between the parties regarding the sale and distribution of PENNGUARD® Block Lining System Products made by

---

[1] Hadek also filed a Declaration by Albert de Kreij (ECF No. 122-1), which will not be considered in connection with Ergon's motion. Mr. de Kreji's submission after Ms. Bizyak investigated this matter and submitted her report is irrelevant to the issue here, which is whether her opinions meet the required standards of Rule 702.

[2] The matters discussed in this section are not intended to represent a full summary of the procedural history of this complex action or the full substance of the parties' respective positions. The Court primarily writes for the benefit of the parties, who are familiar with the factual and legal background of this case.

Ergon (the "Master Agreement"). By its choice, Hadek's sales were limited to PENNGUARD®

Block 55 with a 1.5 or 2.0-inch thickness. The parties dispute the nature and timing of the

termination of the Master Agreement. Thereafter, Hadek sued Ergon for breach of contract and

tortious interference.[3] Hadek claims that Ergon's conduct caused it to lose certain sales

opportunities of PENNGUARD® products.

      In connection with its damages claims, Hadek retained Melissa Bizyak as an expert

witness. Her report, and the opinions expressed therein, are at issue here. In short, Ergon asserts

that she must be excluded as an expert because she is unqualified to render the opinions she has

expressed, that her opinions are unreliable and that her opinions do not fit the facts of this case.

Hadek disputes Ergon's contentions and argues that her opinions comply with the requirements of

Rule 702 and the holdings of *Daubert* and its progeny.

      Each of the issues raised by Ergon will be addressed herein.

## II.   Legal Standard

      Federal Rule of Evidence 702, which governs the admissibility of expert testimony,

provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if the proponent
> demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) that testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

---

[3]  After it commenced this action, Hadek amended its Complaint to assert additional claims and damages. (ECF Nos. 28, 138.) Ergon has asserted counterclaims against Hadek and others. (ECF Nos. 11, 37, 73.)

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one . . . [directed at] the scientific validity—and thus the evidentiary relevance and reliability—of . . . the proposed submission." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 594-95 (1993). The Third Circuit has explained that under *Daubert*, "district courts perform a gatekeeping function to ensure that expert testimony meets the requirements of Federal Rule of Evidence 702." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017).

As stated by the Third Circuit:

We have addressed the requirements of Fed.R.Evid. 702, focusing on the trilogy of restrictions on expert testimony: qualification, reliability and fit. First, the witness must be qualified to testify as an expert. Qualification requires that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert as such. Second, the testimony must be reliable. In other words, the expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief. An assessment of the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity. Third, the expert testimony must fit, meaning the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

*Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 321 (3d Cir. 2003) (citation modified).

Thus, "[a]s gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 591).

"[T]he evidentiary requirement of reliability is lower than the merits standard of correctness." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) To be reliable, an expert's testimony must be "based on the methods and procedures of science, not on subjective belief and unsupported speculation." *UGI Sunbury*, 949 F.3d at 833-34 (quoting *Karlo*, 849 F.3d at 80-81). An expert's testimony need not have "the best foundation" or be "supported by the best methodology or unassailable research." *Id.* at 834 (quoting *Karlo*, 849 F.3d at 81). Instead, admissibility of an expert's opinions turns on "whether the expert's testimony is supported by good grounds." *Id.* (quoting *Karlo*, 849 F.3d at 81); *see In re Paoli R.R. Yard PCB Lit.*, 35 F.3d 717, 746 (3d Cir. 1994) ("[T]he issue is whether the evidence should be excluded because the flaw is large enough that the expert lacks good grounds for his or her conclusions."). In undertaking this inquiry, "[e]ach aspect of the expert's opinion 'must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules.'" *Karlo*, 849 F.3d at 81 (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012)).

The "fit" requirement "goes primarily to relevance." *Id.* (quoting *Daubert*, 509 U.S. at 591). While "higher than bare relevance," the standard for assessing the "fit" of an expert's testimony "is not that high." *In re Paoli*, 35 F.3d at 745. "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *UGI Sunbury*, 949 F.3d at 835 (quoting *Daubert*, 509 U.S. at 591). Thus, the inquiry in assessing "fit" is "whether an expert's testimony . . . 'will help the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (quoting Fed. R. Evid. 702(a)).

### III.    Discussion

#### A.    **The Bizyak Report**

Hadek retained Melissa Bizyak, a partner at the public accounting and consulting firm of Grossman Yanak & Ford, to provide expert opinions regarding the damages Hadek claims in connection with its breach of contract and tortious interference claims against Ergon. Ms. Bizyak issued an expert report on December 18, 2024, and she was deposed by Ergon on January 6, 2025.

As noted in her report, Ms. Bizyak's services were limited to the review of documents provided to her and the preparation of a report with her opinions as to the damages incurred by Hadek in the form of lost profits. (ECF No. 112-1 at 2-3.)  With respect to the breach of contract claim, she concludes that Hadek sustained more than $20 million in damages for lost profits on missed opportunities in fifteen projects, and more than $11 million in damages related to the tortuous interference claim.[4] (*Id.* at 12, 13.) As relevant, the basis for these opinions is discussed in the context of Ergon's motion to exclude these opinions.

Ergon asserts that the report and opinions of Ms. Bizyak do not meet the requisite "trilogy" of qualification, reliability and fit.

##### 1.    Qualifications of Ms. Bizyak

Ergon argues first that Ms. Bizyak is not qualified to render opinions in this case. Its contention is based on several factors. First, Ergon argues that Ms. Bizyak's report and deposition testimony include impermissible legal conclusions on issues of contract interpretation and performance, matters that are beyond her expertise as an auditor. By way of example, Ergon notes that Ms. Bizyak makes certain representations regarding the exclusive territory of the Master Agreement, Hadek's exclusivity and first right to pursue opportunities in its territory, Ergon's

---

[4]  The tortious interference damage figure is subsumed into the $20 million figure.

obligations under the Master Agreement and the Agreement's term more generally. Further, Ms. Bizyak testified that Ergon breached the Master Agreement and that it was her opinion that the Agreement remained in effect through December 31, 2021, despite conflicting testimony. According to Ergon, Ms. Bizyak is not qualified to render legal opinions about whether the contract was breached, whether it was exclusive or if the parties performed in compliance with its terms.

Hadek disagrees, asserting that Ms. Bizyak possesses the requisite specialized knowledge to offer expert opinions in this case. As reflected on her resume, she is a certified public accountant a certified valuation analyst, and is certified in financial forensics. She has been qualified as an expert in a number of cases and several of her prior expert engagements have involved the calculation of lost profits. Hadek disputes that Ms. Bizyak is offering any legal opinions; rather, she is assuming, for purposes of calculating damages, that liability and causation would be proven by Hadek at trial. Thus, according to Hadek, Ergon's arguments are misplaced and if anything, Ergon is actually raising a reliability issue, not challenging Ms. Bizyak's qualifications.

Ergon also argues that Ms. Bizyak is unqualified to provide opinions on sales and marketing of the at-issue glass block lining products in Asia. Ergon bases this contention on the fact that Ms. Bizyak has no relevant experience in this realm, did no independent research on this industry and merely accepted the information that was provided by Hadek. Hadek contends in turn that Ms. Bizyak's financial expertise is sufficient qualification and argues that she is not required to possess any special expertise regarding the at-issue products.

The Court finds that Ms. Bizyak is qualified to render the opinions expressed in her report. It is well established that there is a broad range of knowledge, skills and training that qualifies an individual as an expert. Ms. Bizyak possesses the required "specialized knowledge" through her education, background and experience to render opinions about lost profits. *See In re Paoli*, 35

6

F.3d at 741. She is not being offered as an expert on the glass block lining industry, but on the calculation of Hadek's damages. Hadek is correct that as an expert, Ms. Bizyak is free to make certain assumptions regarding liability issues for purposes of expressing opinions on damages and may rely on information supplied by Hadek in doing so. Doing so does not constitute rendering legal opinions, nor is she qualified to do so. Indeed, other than testifying about assumptions on which she relied, she would be precluded from offering any opinions about liability, including but not limited to, legal conclusions regarding the liability of either party. And she is also subject to cross-examination about her assumptions and the sources of the information on which she relies.

In short, Ergon's assertions go more to the reliability and/or fit of Ms. Bizyak's opinions, not her qualifications to render these opinions. Therefore, Ergon's motion will be denied with respect to this issue.

As it relates to the issues of reliability and fit, the Court concludes that despite the parties' extensive and well-done briefing, a *Daubert* hearing is necessary to resolve these issues. A conference will be held to schedule the hearing.

And now, this 29th day of September, 2025, it is ORDERED that Ergon's motion to exclude the testimony of Hadek's Damages Expert Melissa Bizyak (ECF No. 109) is DENIED in part as it relates to Ms. Bizyak's qualifications. The Court defers ruling on the remainder of Ergon's motion pending the completion of a *Daubert* hearing.

BY THE COURT:

/s/ Patricia L. Dodge
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE

7