**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HADEK PROTECTIVE SYSTEMS B.V. and HADEK PROTECTIVE SYSTEMS, INC., Plaintiffs, v. ERGON ASPHALT & EMULSIONS, INC., Defendant, v. A. DE KREIJ HOLDING, B.V. and ALBERT DE KREIJ, Third-Party Defendants. | Civil Action No. 2:22-cv-1421<br>Chief Magistrate Judge Patricia L. Dodge |

**MEMORANDUM OPINION**[1]

Pending before the Court is a motion for partial summary judgment filed by Plaintiffs Hadek Protective Systems B.V. ("Hadek B.V.") and Hadek Protective Services, Inc. (collectively, "Hadek"), and Counterclaim Defendants A. de Kreij Holding, B.V. ("AdK Holding") and Albert de Kreij, (collectively, "AdK Parties"). (ECF No. 179.) The motion seeks summary judgment against Defendant Ergon Asphalt & Emulsions, Inc. ("Ergon") as to Count XIII and all veil-piercing allegations asserted in Ergon's Third Amended Counterclaim ("TACC") (ECF No. 143).

For the following reasons, the motion will be granted in part and denied in part.

[1] In accordance with 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct all proceedings in this case. (ECF Nos. 17, 18, 174.) The undersigned therefore has the authority to decide dispositive motions and enter final judgment.

## I. Relevant Procedural History[2]

Ergon sought leave to amend its counterclaim for the third time on February 7, 2025. The proposed amendment added the AdK Parties as counterclaim defendants and asserted additional claims under the Pennsylvania Uniform Voidable Transactions Act ("PUVTA"), 12 Pa. Cons. Stat. § 5101 *et seq.*, as well as standalone veil-piercing claims. (ECF No. 113.) In its accompanying brief, Ergon argued that the amendment was proper because Hadek had secretly pledged its litigation claims against Ergon in this action to its parent company, AdK Holding, shortly before filing for bankruptcy in the Netherlands. Ergon further alleged that Albert de Kreij ("Mr. de Kreij") had orchestrated a "shell game" resulting in the AdK Parties becoming the real parties in interest in this action. *See* ECF Nos. 114, 131. Hadek opposed the motion. *See* ECF Nos. 127, 135.

The Court granted the motion to amend in part, permitting Ergon to add the AdK Parties as counterclaim defendants and to assert PUVTA claims against both Hadek and the AdK Parties (Count XIII). The motion was denied as to the proposed standalone veil-piercing claims, but the Court allowed Ergon to incorporate its allegations related to veil-piercing into Count XIII. (ECF No. 140.)

Ergon filed its TACC in compliance with the Court's instruction. (ECF No. 143.) Once Hadek filed an Answer[3] (ECF No. 147), the Court issued an order (ECF No. 148) setting deadlines for limited discovery relating to Count XIII and the newly joined parties. The parties requested a conference with the Court in early February 2026 to address several ongoing discovery issues. While some discovery had been completed, Hadek and the AdK Parties objected to what they characterized as "broad entity-relationship and financial-history requests on grounds of relevance,

---

[2] Given the complexity of the claims and counterclaims in this action, only the factual and procedural history relevant to disposition of the present summary judgment motion are discussed herein.

[3] The AdK Parties filed a separate Answer. (ECF No. 161.)

burden, and proportionality." (ECF No. 180 at 10.) Ergon maintained that the requested information was, and still is, critical to their PUVTA counterclaim and veil-piercing allegations. (ECF No. 189 at 14-17.) The Court agreed to generally continue all deadlines to allow the parties more time to confer. (ECF No. 170.)

At a second conference with the Court, Hadek and the AdK Parties requested leave to file a limited summary judgment motion to potentially eliminate the need for any additional discovery. (ECF No. 175.) After taking the matter under advisement, the Court agreed and issued a briefing schedule for the contemplated motion. All other deadlines were deferred pending further review. (ECF No. 176.)

Hadek and the AdK Parties moved for partial summary judgment as to Count XIII and the veil-piercing allegations. (ECF No. 179.) Once the motion had been fully briefed (ECF Nos. 180, 181, 182, 184, 186, 189, 190, 191), Hadek and the AdK Parties requested that the Court schedule oral argument given the "complex legal issues at hand in the Motion." (ECF No. 192 at 2.) The Court agreed and held oral argument on May 28, 2026. The motion is now ready for disposition.

## II. <u>Relevant Factual Background</u>

On November 9, 2023, Hadek B.V. entered into a written loan agreement (the "November Loan Agreement") with its parent company, AdK Holding. AdK Holding agreed to lend Hadek B.V. a maximum of €800,000 to be made in a series of €200,000 installments. The agreement included a 10% compound interest per annum, with full repayment of outstanding principal due on November 1, 2027. (ECF No. 186-10, Ex. 8.1 at 12-17.) A second loan agreement followed in April 2024, under which AdK Holding committed to lend Hadek B.V. an additional €350,000 (the "April Loan Agreement") under substantially similar terms. (ECF No. 186-12, Ex. 9.1.)

In connection with the November and April Loan Agreements (collectively, the "Loan Agreements"), Hadek B.V. executed deeds pledging its claims against Ergon in this litigation as a security for its obligation to AdK Holding (the "Deeds of Pledge"). (ECF Nos. 186-10, Ex. 8.1 at 18-21; 186-16, Ex. 11.1.)

While it is undisputed that AdK Holding ultimately advanced Hadek B.V. the full €1,150,000 contemplated under the Loan Agreements (ECF No. 186-13, Ex. 10), the parties disagree as to the nature and economic effect of the corresponding pledges. Hadek and the AdK Parties characterize them as conventional security interests securing Hadek B.V.'s repayment obligations. Ergon, on the other hand, highlights the circumstances surrounding the transactions as support for the allegations in its TACC.

To start, Mr. de Kreij owns AdK Holding, which in turn owns Hadek B.V., and Mr. de Kreij served as Hadek B.V.'s managing director. Mr. de Kreij therefore executed the Loan Agreements and Deeds of Pledge on behalf of both entities. *See* ECF Nos. 186-10, Ex. 8.1 at 7, 11; 186-11, Ex. 9 at 7; 186-15, Ex. 11 at 5. Ergon also emphasizes that the pledged claims have been valued by Hadek's own expert at over $20 million, while the loans equaled roughly $1.24 million. (ECF No. 190 ¶ 20.) Next, this litigation was already pending at the time the pledges occurred, and the pledges were not disclosed to Ergon during the original fact-discovery period. (*Id.* ¶¶ 9-11.) Ergon asserts that it only learned of the pledges after Hadek B.V. entered bankruptcy in the Netherlands when counsel for AdK Holding advised that any amounts Ergon might be obligated to pay as a result of this litigation should be paid to AdK Holding rather than Hadek B.V. or the bankruptcy estate. (*Id.* ¶¶ 15-16.) Ergon thereafter amended its counterclaim to add the PUVTA claim and veil-piercing allegations that are subject to the present motion.

## III. Legal Standard

The Federal Rules of Civil Procedure provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted, in whole or in part, against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *Doe v. Cty. of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

## IV. Discussion

### A. PUVTA

Count XIII of Ergon's TACC asserts a claim under the PUVTA against Hadek B.V. and the AdK Parties. The purpose of the PUVTA "is to protect creditors by preventing a debtor from placing assets otherwise available to pay creditors out of the reach of those creditors" and "to

prevent a debtor from putting assets otherwise available to its creditors out of their reach . . . . At its core, fraudulent transfer law is a debt-collection device and not a revenue generating tool; its mission is to prevent the unjust diminution of the debtor's estate." *James v. McManus*, 2024 WL 3238131, at *8 (E.D. Pa. June 27, 2024) (quoting *In re Lewis*, 574 B.R. 536, 539 (Bankr. E.D. Pa. 2017)).

Relevant here, § 5104 of the PUVTA provides two distinct grounds upon which a creditor may challenge a debtor's transfer. Under § 5104(a)(1), a transfer is voidable as to a creditor if the debtor made the transfer "with actual intent to hinder, delay or defraud any creditor of the debtor." 12 Pa. Cons. Stat. § 5104(a)(1). Section 5104(a)(2), by contrast, applies where a debtor made a transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation" and one of the specified conditions concerning the debtor's financial circumstances is satisfied. *Id.* § 5104(a)(2). The provisions therefore address distinct concerns. Section 5104(a)(2) examines the economic substance of the transaction without requiring proof of fraudulent intent, while § 5104(a)(1) focuses on the debtor's actual intent.

Ergon proceeds under both theories of liability. Each will be addressed in turn.

**B. Section 5104(a)(2) — constructive fraud**

Hadek and the AdK Parties argue that Ergon's § 5104(a)(2) claim fails because it cannot establish that Hadek B.V. failed to receive reasonably equivalent value for the pledges. They contend that because the record shows that Hadek B.V.'s litigation claims against Ergon were pledged as collateral securing its repayment obligations, and that AdK Holding advanced the financing, Hadek B.V. received reasonably equivalent value in exchange for the pledges. (ECF No. 180 at 15-17.) The Court agrees.

Section 5104(a)(2) of the PUVTA presumes constructive fraud where the creditor shows "without receiving a reasonably equivalent value in exchange for the transfer or obligation," a debtor "(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." 12 Pa. Cons. Stat. § 5104(a)(2). To assess the reasonably equivalent value element, the Third Circuit has directed that courts utilize a two-step, sequential approach to determine: (1) whether the transferee gave some "value"; and (2) if value was given, whether it was reasonably equivalent to what the debtor gave up. *See In re R.M.L., Inc.*, 92 F.3d 139, 149 (3d Cir. 1996).

It is undisputed that AdK Holding actually advanced the total €1,150,000 contemplated by the Loan Agreements to Hadek B.V. (ECF No. 186-13, Ex. 10.) Ergon contends, however, that the litigation claims Hadek B.V. pledged were valued by Hadek's own expert at more than $20 million. In return, Hadek B.V. received financing from AdK Holding worth roughly $1.24 million. Ergon argues that this "gross disparity" supports a finding that Hadek B.V. did not receive reasonably equivalent value. (ECF No. 189 at 24.) But this comparison conflates the value of the collateral with the value of the interest transferred.

The record establishes that Hadek B.V. did not sell or assign its claims outright in exchange for $1.24 million. Instead, the language of the Loan Agreements show that Hadek B.V. pledged the litigation claims to AdK Holding as collateral to secure the amounts specified under each agreement:

> 8.1 By way of security for payment of everything that the Lender can claim from the Borrower on account of this Agreement, the Borrower shall establish an undisclosed pledge for the benefit of the Lender on the claim of the Borrower in respect of Ergon Asphalt & Emulsions Inc., having its registered office in Jackson,

> Mississippi, USA ("Ergon"), i.e. a claim for compensation for damages incurred by the Borrower, which claim is related to the violations by Ergon of the exclusive distribution right granted to the Borrower regarding the Pennguard system by Ergon, and which claim is currently pending in the USA before the United States District Court for the Western District of Pennsylvania (USA) under civil action no. 2:22-cv-01421-PLD.

(ECF No. 186-10, Ex. 8.1 ¶ 8.1.) The Deeds of Pledge contain additional provisions tying AdK Holding's secured interest to the amounts Hadek B.V. owes under the corresponding Loan Agreements and preserving Hadek B.V.'s interest in funds collected in excess of the amount owed to AdK Holding:

> 3. On account of the Loan Agreement, the Borrower is liable to pay the Lender an amount of at most EUR 800,000 (in words: eight hundred thousand euros), exclusive of Interest, in the course of which the Parties agreed on the obligation on the part of the Borrower, by way of additional security for compliance / redemption by the Borrower with / of everything that the Lender can claim on account of the Loan Agreement, to establish an undisclosed right of pledge on the claim of the Borrower in respect of Ergon Asphalt & Emulsions Inc., having its registered office in Jackson, Mississippi, USA ("Ergon"), i.e. a claim for compensation for damages incurred by the Borrower, which claim is related to violations by Ergon of the sole distribution right granted to the Borrower regarding the Pennguard system by Ergon, and which claim is currently pending in the USA before the United States District Court for the Western District of Pennsylvania (USA) under civil action no. 2:22-cv-01421-PLD (the "Claim").
>
> . . . .
>
> 15. If the collection or other capitalization of the pledged Claim takes place at a time that the Borrower is not liable to pay any amounts to the Lender on account of the Loan then the Lender shall forthwith pay the proceeds to the Borrower;
>
> 16. With regard to the existence and the amount of the debts for which this pledge serves as a security, the Borrower shall act in accordance and be satisfied with the books of the Lender, without prejudice to its right to subsequently recover that which it may evidence has been received by the Lender in excess of the amount to which it is entitled.

(*Id.* ¶¶ 3, 15-16.)

Thus, the plain language of the documents establishes that AdK Holding did not acquire the entire economic value of the underlying litigation claims merely because those claims served

as collateral. A security interest securing a particular debt does not transfer to the secured creditor all equity in collateral exceeding the secured obligation. The relevant comparison is therefore between the financing Hadek B.V. received and the economic interest it transferred, not between the amount loaned and the maximum potential value of the collateral. *See Mellon Bank, N.A. v. Metro Comms., Inc.*, 945 F.2d 635, 647 (3d. Cir. 1991) ("The touchstone is whether the transaction conferred realizable commercial value on the debtor reasonably equivalent to the realizable commercial value of the assets transferred. Thus, when the debtor is a going concern and its realizable going concern value after the transaction is equal to or exceeds its going concern value before the transaction, reasonably equivalent value has been received."); *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 212-13 (3d Cir. 2006).

This distinction is dispositive. And the insider relationship and circumstances surrounding disclosure of the transactions cited by Ergon do not change the conclusion. Although those facts may bear on a debtor's actual intent, they do not alter the undisputed economic structure of the transaction for purposes of § 5104(a)(2). On the present record, no reasonable factfinder could conclude that Hadek B.V. failed to receive reasonably equivalent value merely because the collateral securing the €1,150,000 loan potentially had a substantially greater value than the secured debt. As a result, Hadek and the AdK Parties are entitled to summary judgment as to Ergon's constructive fraud claim under § 5104(a)(2).[4]

**C. Section 5104(a)(1) — actual intent**

Ergon also asserts a claim under § 5104(a)(1). Section 5104(a)(1) of the PUVTA provides that a transfer is voidable as to a creditor if the debtor made the transfer "with actual intent to

---

[4] With respect to Ergon's argument relating to outstanding discovery regarding the transactions and relationships between Hadek and the AdK Parties, the additional discovery identified by Ergon does not undermine the undisputed economic structure upon which the Court's ruling rests. Rule 56(a) therefore does not require deferral of the constructive-fraud issue.

hinder, delay or defraud any creditor of the debtor." Because "individuals are rarely willing to admit intent, actual fraud is rarely proven by direct evidence." *In re Carbone*, 615 B.R. 76, 80 (Bankr. E.D. Pa. 2020). Instead, Section 5104(b) provides a nonexclusive list of factors—commonly referred to as the "badges of fraud"—that a court should consider "in determining whether fraud has been proven by circumstantial evidence." *Id.* The badges of fraud include:

> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;
>
> (3) the transfer or obligation was disclosed or concealed;
>
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) the transfer was of substantially all the debtor's assets;
>
> (6) the debtor absconded;
>
> (7) the debtor removed or concealed assets;
>
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 Pa. Cons. Stat. § 5104(b). "Proof of the existence of any one or more of the factors enumerated in subsection (b) may be relevant evidence as to the debtor's actual intent but does not create a presumption that the debtor has made a voidable transfer or incurred a voidable obligation." *Id.* cmt. 6. *See also Chestnut St. Consol., LLC v. Dawara*, 619 F. Supp. 3d 489, 506-07 (E.D. Pa. Aug.

3, 2022) (quoting *Eddystone Rail Co., LLC v. Bridger Logistics, LLC*, 2022 WL 1768853, at *3 (E.D. Pa. Mar. 21, 2022)) ("No particular badge is necessary, nor is any combination sufficient; finding intent is always fact specific."); *In re Arbogast*, 466 B.R. 287, 313-14 (Bankr. W.D. Pa. 2012) (concluding actual fraudulent intent had not been established despite finding numerous statutory factors present). The circumstances relevant to the challenged transfer must instead be considered collectively and in context.

Ergon identifies eight badges of fraud that it contends are implicated by the transactions. According to Ergon, many of the badges are undisputed, including: the transfer was made to an insider—Hadek B.V.'s parent company AdK Holding; Hadek B.V. retained control or possession over the transferred asset; the transfer was not disclosed to Ergon; this litigation was already pending; and Hadek B.V. subsequently became insolvent. While other factors remain disputed, Ergon argues that the surrounding circumstances provide more evidence from which intent reasonably could be inferred: the loan and pledge transactions were between affiliated entities under the common control of Mr. de Kreij; Mr. de Kreij executed the transactions on behalf of both Hadek B.V. and AdK Holding; the first transaction occurred after Ergon had asserted counterclaims against Hadek; the pledges were not disclosed to Ergon during the original fact-discovery period notwithstanding discovery concerning Hadek's financial condition. Ergon also relies on Mr. de Kreij's testimony that Hadek was "debt free," despite the existing loan arrangements and repayment obligations. *See* ECF No. 189 at 20-23.

Hadek and the AdK Parties emphasize that the transactions involved real loans for real value. Reasonably equivalent value and actual intent, however, are separate questions under the PUVTA. While it may provide substantial evidence of a legitimate commercial purpose, and a factfinder might ultimately conclude that the transactions were undertaken solely to obtain needed

financing, § 5104(a)(1) and § 5104(a)(2) are independent statutory grounds for avoidance. *See In re Blatstein*, 192 F.3d 88, 97-98 (3d Cir. 1999) (recognizing actual fraud claim where debtor intended to hinder or delay a creditor regardless of any other motivation he may have had for challenged transfer). The Court's earlier conclusion that Hadek B.V. received reasonably equivalent value therefore has no bearing on whether it possessed the intent prohibited by § 5104(a)(1).

Hadek and the AdK Parties also argue that Ergon's § 5104(a)(1) theory fails regardless of Hadek B.V.'s intent because the particular asset pledged—i.e., the litigation claims against Ergon—is structurally incapable of hindering Ergon's recovery. (ECF No. 180 at 17-19.) This argument stems from the reciprocal nature of the parties' claims. The pledged asset is Hadek B.V.'s affirmative claim against Ergon. Ergon's asserted creditor status, meanwhile, arises from its counterclaims against Hadek. Hadek and the AdK Parties contend that these positions are mutually exclusive. If Ergon obtains a net judgment against Hadek, they reason, Hadek necessarily has no net recovery against Ergon capable of being hindered by the pledge. If Hadek obtains a net recovery against Ergon, Ergon is not a creditor whose collection efforts have been impaired. And if each side obtains a recovery, competing judgments may be offset.

This argument raises a substantial issue concerning the practical consequences of the pledge and the relief that Ergon ultimately may obtain. It does not, however, establish that Ergon's § 5104(a)(1) claim fails as a matter of law. The PUVTA defines a "creditor" as "a person that has a claim." 12 Pa. Cons. Stat. § 5101(b). A "claim," in turn, includes a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.* The statute therefore expressly contemplates creditor status before the ultimate validity or amount of a right to payment

has been adjudicated. Ergon's counterclaims are not excluded from that definition merely because the ultimate net outcome of this litigation has yet to be determined.

Additionally, in *Blatstein*, the Third Circuit explained that § 5104(a)(1)'s reference to "any creditor" means that an intent to hinder, delay or defraud another creditor is sufficient. 192 F.3d at 97. Thus, Hadek and the AdK Parties' argument that the reciprocal nature of the parties' claims prevents the pledge from impairing Ergon's own net recovery does not dispose of the actual-intent claim. Even if that circumstance further weakens Ergon's theory as to its own collective efforts, it is sufficient that a reasonable factfinder could infer that the pledges were intended to place a prospective litigation recovery behind an insider lien, thereby hindering or delaying another creditor.

Moreover, § 5104(a)(1) focuses on whether a transfer was made "with actual intent to hinder, delay or defraud" a creditor. Nothing in the language of the statute requires the creditor to demonstrate, as an additional element of liability, that the challenged transaction ultimately *succeeded* in reducing the amount collectible on a final judgment. This distinction is particularly important at the summary judgment stage where the ultimate value of the parties' respective claims have yet to be determined. Nor has the Court determined what remedies, if any, would be available if Ergon establishes that the pledges were made with the intent prohibited by § 5104(a)(1). While those questions certainly may affect the practical significance of Ergon's claims, they do not eliminate it as a matter of law.

To be clear, none of the circumstances cited by Ergon necessarily establish actual intent. Viewed in the light most favorable to Ergon as the nonmoving party, though, the insider relationship, common control, timing of the transactions, nondisclosure, pending litigation, subsequent insolvency, and circumstances surrounding Hadek B.V.'s financial condition would

permit a reasonable jury to infer that Hadek B.V. made the pledges, at least in part, with an intent to hinder or delay a creditor. The Court emphasizes that it expresses no view as to whether Ergon will ultimately prove such intent. It holds only that the record does not permit the absence of actual intent to be determined as a matter of law.

**D. Article III Standing**

Hadek and the AdK Parties repackage their structural argument to separately argue that Ergon lacks standing to bring a claim under the PUVTA. They contend that the pledge caused no injury to Ergon because the pledged asset could never have been available to satisfy a net judgment in Ergon's favor. They also argue that avoiding the pledge would not improve Ergon's position because the claims would simply return unencumbered to Hadek B.V.'s bankruptcy estate, thereby failing to provide Ergon any meaningful relief. *See* ECF No. 180 at 23-26. The Court is not persuaded that these arguments warrant summary judgment on the present record.

To establish Article III standing, an individual must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). As already discussed, the PUVTA defines a "claim" broadly and expressly recognizes contingent and disputed claims such as Ergon's. *See* 12 Pa. Const. Stat. § 5101(b). Ergon has also identified present consequences that it alleges are directly attributable to the challenged transactions. It contends, among other things, that the undisclosed pledges altered the economic interests implicated in this litigation and caused it to incur additional litigation expenses in identifying and addressing AdK Holding's asserted interest in the litigation proceeds. *See* ECF No. 189 at 30-33.

Ergon also disputes Hadek and the AdK Parties' statements suggesting that avoidance is the only available remedy under the PUVTA. The statute also authorizes additional remedies such

as injunctive and other equitable relief. *See* 12 Pa. Const. Stat. § 5107(a). At this stage, the Court need not determine which remedies will be available should Ergon prove its § 5104(a)(1) claim. Instead, the inquiry here is limited to whether Hadek and the AdK Parties have demonstrated that that the reciprocal nature of the parties' claims eliminates, as a matter of law, every cognizable injury or form of redress associated with the challenged transactions. Viewing the record in Ergon's favor, they have not.

As such, Hadek and the AdK Parties' motion will be denied to the extent that it seeks dismissal of Count XIII for lack of Article III standing.[5]

## V. <u>Conclusion</u>

For these reasons, the Motion for Partial Summary Judgment (ECF No. 179) will be granted with respect to Ergon's § 5104(a)(2) claim only. The motion will otherwise be denied.

An appropriate order will follow.

Dated: October 8, 2026 BY THE COURT:

/s/ Patricia L. Dodge
PATRICIA L. DODGE
CHIEF UNITED STATES MAGISTRATE JUDGE

[5] Given the survival of the underlying § 5104(a)(1) claim and the factual disputes concerning the relevant entities, Hadek and the AdK Parties' motion will also be denied as to Ergon's veil-piercing allegations.